UNITED STATES, Appellee,

v.

Orison S. ACEVEDO, Fireman, U.S.
Coast Guard, Appellant.

No. 97–1164.
Crim.App. No. 1066.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 5, 1998.

Decided April 21, 1999.

Effron, J., filed a concurring opinion.

COX, C.J., delivered the opinion of the Court, in which SULLIVAN, CRAWFORD, and GIERKE, JJ., joined. EFFRON, J., filed a concurring opinion.

For Appellant: *Lieutenant Sandra K. Selman* (argued); *Lieutenant Richard R. Beyer* (on brief).

For Appellee: *Lieutenant Susan Polizzotto* (argued); *Lieutenant William G. Rospars* (on brief).

Amicus Curiae Urging Reversal: *Lieutenant Commander R.C. Klant*, JAGC, USN.

Chief Judge COX delivered the opinion of the Court.

## I

Two issues for review are presented in appellant Acevedo's case. The first one questions the meaning and effect of a provision of appellant's pretrial agreement pertaining to punitive discharge. In essence, the agreement indicated that, if a dishonorable discharge was adjudged, the convening authority would have to suspend it. The agreement did not specify that a bad-conduct discharge, if adjudged, would be similarly suspended, and indeed a bad-conduct discharge was adjudged. Accordingly, the con-

vening authority approved the discharge as adjudged. Appellant now contends that the bad-conduct discharge should have been suspended, just as a dishonorable discharge would have been.

The other issue questions what the holding of the Court of Criminal Appeals on the first issue was. *See* 46 MJ 830 (1997). In sum, all members (four) of that court, sitting en banc, agreed that the construction of the pretrial agreement provision was a question of law. Two members of the court held that the provision was valid and enforceable, and they voted to affirm appellant's sentence to a bad-conduct discharge. *Id.* at 835. The remaining two members, concurring in part and dissenting in part, concluded that the unsuspended bad-conduct discharge was not enforceable. They would have ordered it suspended, just as a dishonorable discharge would have been. *Id.* at 838.

Given our precedents, however, even the dissenters acknowledged that an evenly split decision on a matter of law resulted in an affirmance of the decision below. Accordingly, the dissenters "agree[d] that until further clarification of this subject is provided by the Court of Appeals for the Armed Forces, the sentences in both cases [1] must be affirmed, despite the evenly divided vote on the action to be taken with respect to the punitive discharges." *Id.* at 839; *see United States v. Ohrt*, 28 MJ 301, 302-03 (CMA 1989).

Upon appellant's petition, we granted review of both the underlying pretrial agreement issue and the issue concerning the effect of the evenly divided appellate court decision. 49 MJ 40 (1998). We now hold that the provision of the pretrial agreement was valid and that the convening authority did not err in approving the unsuspended bad-conduct discharge. Further, we adhere to the general rule that an evenly divided vote on a matter of law in an appellate tribunal sustains the holding of the court below.

1. The Court of Criminal Appeals consolidated appellant's case with that of a co-actor, Machin-    ery Technician Third Class Gilbert.

## II

Appellant was tried by a military judge sitting alone as a general court-martial in Seattle, Washington. Pursuant to his pleas, he was convicted of attempting to pawn and receive cash for Coast Guard equipment and supplies without proper authority; conspiracy to commit larceny of military clothing for later unauthorized sale; wrongful disposition of military property (4 specifications); larceny of military property (4 specifications); and soliciting another to steal military property (2 specifications).[2] In all, appellant stole over $6,000 worth of Coast Guard equipment, including tools, cold weather parkas, and wet suits.

Appellant's pleas of guilty were pursuant to a pretrial agreement, as indicated. The military judge conducted an appropriate inquiry into the providence of the pleas, ensuring there was a factual basis for them. *See United States v. Care,* 18 USCMA 535, 40 CMR 247 (1969). The judge also ensured on the record that appellant understood the meaning and effect of his pretrial agreement, including its sentencing provisions. The agreement recited "that this offer to plead guilty originated with me [appellant] and my counsel."

That portion of the agreement styled "Maximum Sentence Appendix" set forth the following with regard to punitive discharge:

A punitive discharge may be approved as adjudged. If adjudged and approved, a dishonorable discharge will be suspended for a period of 12 months from the date of court-martial at which time, unless sooner vacated, the dishonorable discharge will be remitted without further action.

Without foreknowledge of the limitations set forth in the Maximum Sentence Appendix, the military judge sentenced appellant to confinement for 30 months, total forfeitures, reduction to E–1, and a bad-conduct discharge. The convening authority approved the sentence, but in accordance with another portion of the pretrial agreement, he sus-

pended confinement in excess of 15 months for 12 months.

On appeal to the Court of Criminal Appeals, appellant raised two issues unrelated to his pretrial agreement. That court, however, *sua sponte* questioned the effect of appellant's pretrial agreement, and it invited him to submit a supplemental brief on the issue. *See* 46 MJ at 831. In response, appellant asserted on brief that the bad-conduct discharge had to be suspended according to the implication of the agreement, and that the military judge did not adequately inquire into appellant's understanding of the meaning of the sentence limitations in the agreement. *Id.* at 833.

Judge Weston, joined by Judge Fearnow, opined that, although appellant's agreement was not a "model[ ]" of clarity, it seems abundantly clear from the record ... that all of the parties were of the understanding that a bad-conduct discharge could be approved and executed, if adjudged." *Id.* at 833. Focusing on the actions of appellant and his counsel, they concluded that

[t]o require that the adjudged bad-conduct discharges in these cases be suspended based on an inference raised by the limit on a dishonorable discharge would constitute an unjust windfall to these appellants. We see no reason to retroactively revise the bargains to which these parties freely and voluntarily agreed. *See U.S. v. Rivera,* 46 MJ 52, 55 (1997).

46 MJ at 834.

Chief Judge Baum, joined by Judge O'Hara, concurred in part but dissented with respect to the interpretation of the pretrial agreement. The essence of their view was, since the convening authority agreed to suspend any dishonorable discharge, "that constituted the ceiling for punitive discharges, above which the convening authority could not go." *Id.* at 836. The dissenters reasoned that

an unsuspended punishment is necessarily more severe because, absent legal error or mitigating action by higher authority, it is

---

**2.** Violations of Articles 80, 81, 108, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 881, 908, 921, and 934, respectively.

certain to be executed and the accused will suffer its full impact. With a suspended sentence, that will not happen, if the accused adheres to the terms of probation. In that event, the accused will avoid the suspended punishment entirely.

*Id.* Accordingly, the dissenters would have ordered that the bad-conduct discharge be suspended. *Id.* at 838.

### III

■ The interpretation of a pretrial agreement is a question of law, which is reviewed under a de novo standard. *See United States v. Van Thournout,* 100 F.3d 590, 594 (8th Cir.1996); *United States v. Coleman,* 895 F.2d 501, 505 (8th Cir.1990).

■ A pretrial agreement is created through the process of bargaining, similar to that used in creating any commercial contract. As a result, we look to the basic principles of contract law when interpreting pretrial agreements. *See Cooper v. United States,* 594 F.2d 12, 16 (4th Cir.1979) ("To the extent ... that there has evolved any general body of 'plea bargain law,' it is heavily freighted with ... contract law analogies."); *cf. United States v. Koopman,* 20 MJ 106, 110 (CMA 1985) ("Just as in a commercial contract, certain terms may be implied in an agreement between the prosecution and the defense as to the disposition of criminal charges.").[3]

■ When interpreting pretrial agreements, however, contract principles are outweighed by the Constitution's Due Process Clause protections for an accused. *Id.,* citing *Government of Virgin Islands v. Scotland,* 614 F.2d 360, 364 (3d Cir.1980); *United States v. Kazena,* 11 MJ 28, 34 (CMA 1981) (Everett, C.J., concurring in the result).

### IV

■ We begin any analysis of a pretrial agreement by looking first to the language of the agreement itself. When the terms of a contract are unambiguous, the intent of the parties is discerned from the four corners of the contract. *See United States v. Liranzo,* 944 F.2d 73, 77 (2d Cir.1991). When the contract is ambiguous on its face because a provision is open to more than one interpretation, extrinsic evidence is admissible to determine the meaning of the ambiguous term. *See United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993).

■ The plain language of appellant's pretrial agreement does not prohibit the approval of an unsuspended bad-conduct discharge. The agreement first states that "a" punitive discharge may be approved as adjudged. RCM 1003(b)(9), Manual for Courts–Martial, United States (1995 ed.), sets out two types of punitive discharge for enlisted personnel; one is a bad-conduct discharge and the other is a dishonorable discharge. Either may be adjudged by a general court-martial. *Id.*

The second sentence of the agreement provides that "if" a *dishonorable discharge* is adjudged, then a certain set of events will take place. This is a condition, not a limitation. If appellant had bargained for the suspension of a bad-conduct discharge as well, then logically he would have created an "if" clause for the bad-conduct discharge. The fact that the agreement does not specifically mention a bad-conduct discharge suggests that no condition applied to a bad-conduct discharge.

### V

Looking to the actions of the participants at trial, we find little support for appellant's claim that the agreement was ambiguous or other than as he understood it. To the contrary, the record shows that appellant understood the agreement and that he knowingly and intelligently pleaded guilty in accordance with it. *Cf. Rivera,* 46 MJ at 55.

Prior to accepting appellant's pleas, the military judge thoroughly explained appellant's rights to him, along with the characteristics of his guilty pleas, thus fulfilling her

---

3. Similarly, questions of contract interpretation are generally considered questions of law subject to de novo review. *Golden v. Kelsey–Hayes Com-* *pany,* 73 F.3d 648, 653 (6th Cir.), *cert. denied,* 519 U.S. 807, 117 S.Ct. 49, 136 L.Ed.2d 13 (1996).

affirmative obligations under *United States v. Green*, 1 MJ 453 (CMA 1976), and *United States v. King*, 3 MJ 458 (CMA 1977). The judge ensured on the record that appellant had entered into the agreement freely and voluntarily. She also elicited from appellant an acknowledgment that he had had enough time with his defense counsel to discuss the pretrial agreement, and that he had read and understood each provision of the agreement, including the sentence limitations, before he signed it.[4]

Moreover, it is obvious that the judge recognized the potential for misinterpretation because, after announcing sentence (when, for the first time, she saw the Maximum Sentence Appendix), she immediately directed the following question about the punitive discharge provision to counsel:

MJ: Okay, I do notice that it's—it talks about suspending a dishonorable discharge but there's nothing about doing anything to a bad-conduct discharge so that is not suspended. Right?

TC: That is correct, Your Honor.

DC: Yes, Your Honor.

Further, after announcing sentencing and reviewing the pretrial agreement, the military judge personally advised appellant of his appellate rights. Again, appellant failed to assert that he had not anticipated the possibility of receiving an unsuspended bad-conduct discharge.

█ If an unsuspended bad-conduct discharge did not comport with appellant's understanding of his pretrial agreement, defense counsel had several options. First, he was under a continuing duty to reveal in open court any discrepancy between the defense understanding of the potential sentence and that adjudged by the court. *See United States v. Passini*, 10 MJ 108, 109 (CMA 1980); *United States v. Crowley*, 3 MJ 988 (ACMR 1977), *rev'd*, 4 MJ 170 (CMA 1977),

*pet. for recon. granted*, 4 MJ 272 (CMA 1978), *aff'd*, 7 MJ 336 (CMA 1979).

Second, neither appellant nor defense counsel ever asserted, in either the request for clemency filed on appellant's behalf pursuant to RCM 1105 or in response to the staff judge advocate's posttrial recommendation under RCM 1106, that receiving an unsuspended bad-conduct discharge did not comport with their understanding of the agreement.[5]

Third, Art. 38(c), UCMJ, 10 USC 838(c), provides:

In any court-martial proceeding resulting in a conviction, the defense counsel—

(1) may forward for attachment to the record of proceedings a brief of such matters as he determines should be considered in behalf of the accused on review (including any objection to the contents of the record which he considers appropriate). . . .

Counsel did none of these things; and we have no reason to assume he acted inappropriately, especially when appellant himself consistently, expressed on the record that he understood the agreement the defense itself had proposed, and that he had had adequate time to consult with counsel about it before entering into the agreement.

We agree with Judges Weston and Fearnow that it appears all parties had the same understanding, i.e., that an unsuspended bad-conduct discharge was envisioned as a possible approved and executed punishment. We also find it significant that it was the Court of Criminal Appeals, and not appellant, that initiated the appellate issue concerning the unsuspended discharge.

## VI

We reject, therefore, Chief Judge Baum's premise that the pretrial agreement implied that a suspended dishonorable discharge was the most severe form of discharge that could

---

4. In the pretrial agreement, appellant also attested that "my counsel has fully advised me of the meaning and effect of my guilty pleas" and that "I fully understand and comprehend the meaning thereof and all of their attendant effects and consequences."

5. The staff judge advocate, in his posttrial recommendation, had recommended to the convening authority that he approve appellant's bad-conduct discharge.

be approved. If Chief Judge Baum is correct in arguing that an unsuspended bad-conduct discharge is more severe than a suspended dishonorable discharge, then it would appear that the agreement established that an unsuspended bad-conduct discharge was the most severe form of discharge that could be approved.

It is, in any event, impossible to know which of the two forms of discharge is more severe—until after the period of suspension is completed. Suffice it to say, since both the suspended dishonorable discharge and the unsuspended bad-conduct discharge were approvable punishments under the terms of the agreement, neither discharge trumped the other. Although we acknowledge that the terms of the agreement, as proposed by the defense, appear to create something of a crapshoot with respect to discharge, ours is not to second-guess the parties in this regard, provided the punishments proposed are lawful.

### VII

■ The second granted issue pertains to the effect of the vote below. There is no question but that the issue which divided the court below was a question of law, or that the scope of our jurisdiction permits us to review questions of law de novo. Art. 67(c), UCMJ, 10 USC § 867(c)(1994). Our grant of review of appellant's petition thus would appear to render his complaint moot.

Appellant's argument, however, is in effect a "jurisdictional" one, based on that portion of the language of Article 66(c), UCMJ, 10 USC § 866(c)(1994), which provides:

It [the Court of Criminal Appeals] may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

From this language, appellant reasons, as a matter of semantics, that in order for the Court of Criminal Appeals to "find" a given finding or sentence to be "correct in law and fact," or to "determine" that a finding or sentence "should be approved," at least a simple majority is required.

If, as appellant argues, a tie vote on a matter of law results in a failure of the intermediate appellate court to affirm a particular finding or sentence, then the finding or sentence would be deemed disapproved and the matter at an end, unless and until the Judge Advocate General of the service [6] sent the case to us. Art. 67(a)(2).

If, on the other hand, a tie vote on a question of law operates as a "find[ing]" of "correct[ness] in law and fact" and a "determin[ation]" that a finding or sentence "should be approved," then either the appellant or the Judge Advocate General could bring the correctness of that decision to us. Art. 67(a)(2) and (3).

Accordingly, the remedy proposed is that we declare the lower court's opinion herein to constitute a disapproval of the sentence, and that we await the decision of the General Counsel of the Department of Transportation whether to certify the matter to us. On grounds of judicial economy alone, we decline to adopt this remedy.

Cases decided by evenly divided Courts of Criminal Appeals are indeed infrequent, if not rare.[7] However, even when a Court of Criminal Appeals is comprised of an odd number of judges, the possibility of even, en banc splits exists, due to judicial vacancies, recusals, illnesses, and other types of absences.

In *Ohrt*, we clarified our adoption of the "general rule regarding appellate practice," i.e., that "an 'evenly divided vote result[s] in affirmance of' a lower court decision." 28 MJ at 302, quoting *United States v. Peurifoy*, 22 USCMA 549, 550 n. 4, 48 CMR 34, 35

---

6. The General Counsel of the Department of Transportation is the Judge Advocate General for the Coast Guard. Art. 1(1), UCMJ, 10 USC § 801(1).

7. Article 66(a), UCMJ, 10 USC § 866(a), empowers the Judge Advocate General of each service to appoint judges of the Courts of Criminal Appeals. *See Edmond v. United States*, 520 U.S. 651, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997). It is unfortunate that a Court of Criminal Appeals has been left constituted with an even number of judges, increasing the chances that split decisions will occur.

n. 4 (1973) (dicta), *overruled on other grounds by United States v. Kozak,* 12 MJ 389, 393–94 (CMA 1982). We reached this conclusion though fully cognizant of a then-recent Coast Guard Court of Military Review opinion to the contrary *(United States v. Beckermann,* 25 MJ 870 (CGCMR 1988), *aff'd on other grounds,* 27 MJ 334 (CMA 1989)), which advocated the identical argument here advanced by appellant.

Appellant suggests that, because two of the four judges joined in a dissenting opinion with respect to the sentence, Rule 4 of the rules governing the Courts of Criminal Appeals should be interpreted as precluding affirmance by an equally divided court. The dissenting judges in the court below, however, recognized that our decision in *Ohrt* rejected such an interpretation, and they expressly stated that the sentence in the present case "must be affirmed," despite their dissenting views. 46 MJ at 839. In *Ohrt,* we declined to interpret the predecessor of the current Rule 4, which used virtually identical language, as precluding affirmance by an equally divided court.

In 1996, the Judge Advocates General promulgated a complete revision of the rules governing the Courts of Criminal Appeals, but made no change to the applicable provisions in Rule 4 to preclude affirmance by an equally divided court. In the absence of a change in the rule, we decline to revisit our decision in *Ohrt.*

## VIII

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring):

I write separately to note that, in another context, an unsuspended bad-conduct discharge might be viewed as harsher than a suspended dishonorable discharge for purposes of enforcing a pretrial agreement. In the context of the present case, however, such an evaluation is not pertinent.

Unlike the usual pretrial agreement that sets forth a comprehensive cap on the maximum sentence that may be approved by the convening authority, the agreement in the present case was of a different nature. The plain language of the agreement addressed the action that the convening authority would take in the event that the sentence adjudged by the court-martial included a dishonorable discharge. Under the agreement, the convening authority would suspend the dishonorable discharge. As noted in the majority opinion, the particular circumstances of the case, including the colloquy in the record of trial, support the conclusion that the parties did not envision this provision as a cap on the type of discharge that could be adjudged or approved.