# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32379**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kyree D. PULLIAM**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 March 2017

———————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Bad-conduct discharge. Sentence adjudged 4 December 2015 by SpCM convened at Aviano Air Base, Italy.

*For Appellant:* Captain Annie W. Morgan, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Major J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge JOHNSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

SPERANZA, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty, consistent with his pleas pursuant to a pretrial agreement, of wrongful use and distribution of marijuana on divers occasions, in violation

of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. The military judge sentenced Appellant to a bad-conduct discharge and 100 days of confinement. In accordance with the terms of the pretrial agreement, the convening authority approved only the bad-conduct discharge.

Now on appeal, Appellant maintains that he is entitled to sentencing credit against the approved sentence in accordance with *United States v. Pierce*, 27 M.J. 367 (C.M.A. 1989), and as bargained for in his pretrial agreement with the convening authority. We disagree and affirm.

## I. BACKGROUND

Appellant used marijuana at least ten times with other Airmen and distributed marijuana to other Airmen multiple times while stationed in Italy. His drug use was confirmed by two separate urinalysis tests.

## II. DISCUSSION—PRETRIAL AGREEMENT

Appellant received nonjudicial punishment for marijuana use that, as the parties agreed, overlapped the charged misconduct. Appellant's nonjudicial punishment consisted of reduction in rank from E-3 to E-1, forfeiture of a total of $1,546.00 pay, and 45 days of extra duties. In addition, Appellant's continued drug use eventually resulted in him being ordered into pretrial confinement, where he remained for 114 days.

Appellant reached a pretrial agreement with the convening authority whereby Appellant agreed, *inter alia*, to plead guilty to wrongful use and distribution of marijuana, enter into a reasonable stipulation of fact, be tried by military judge alone, and waive all waivable motions in exchange for the convening authority's agreement—documented in the agreement's appendix—to:

1. Withdraw and dismiss [a specification of wrongful possession of marijuana] with prejudice;

2. Decline to take any additional punitive action for acts arising out of the same facts and circumstances as the referred charge and specifications;

3. Approve no confinement;

4. Direct immediate release of [Appellant] at the conclusion of trial and defer any adjudged confinement until approval of the sentence by the Convening Authority;

5. Approve no restriction to specified limits;

6. Approve no hard labor; and

2

7. Apply any sentencing credit to the *approved* sentence. (Emphasis in original).

The stipulation of fact, admitted as a prosecution exhibit, included the following:

[Appellant's commander] through nonjudicial punishment, found [Appellant] committed misconduct which forms a portion of the basis of the charge in this court-martial. For the . . . non-judicial punishment, [Appellant] was reduced from E-3 to E-1, forfeited $1,546.00 of pay, and performed 45 days extra duty. Except for the nonjudicial punishment, [Appellant] would have promoted to E-4 . . . .

The military judge advised Appellant that the stipulation would be used to determine an appropriate sentence. Appellant agreed to this use.

The military judge discussed Appellant's offer to waive all waivable motions with Appellant and trial defense counsel. During this discussion, trial defense counsel confirmed that Appellant would seek sentencing credit pursuant to *Pierce* for the prior nonjudicial punishment.

During presentencing and after the parties agreed that Appellant was entitled to 114 days of pretrial confinement credit, the military judge addressed the Defense's request for additional sentencing credit for the imposed nonjudicial punishment. Accordingly, trial defense counsel argued, "we would like day-for-day, dollar-for-dollar credit. We would . . . like the opportunity to re-address this after the adjudged sentence is announced, and then look at that in compliance with [the] R.C.M. . . . just to see what's equal to what." The military judge explained his decision to determine any credit prior to sentencing:

Well, I'd rather take it up in advance, because what I'm not going to do is, I'm not going to announce a sentence and then tell you how I got there, because if I'm considering the *Pierce* credit, I'm going to make that determination now, and say this is what the accused would be entitled to. Because it's a legal determination. My decision on what the accused should be sentenced for is based on what he's been found guilty of, based on all the facts and circumstances. So I'm going to do what I think is right. There's two things that are going on here that I just need you to understand.

. . . .

A legal determination of *Pierce* credit is one factor. Secondly, because it's in the stipulation of fact, I am allowed, and I think

expected, to consider these circumstances when determining an appropriate sentence. So that falls into my deliberative process . . . And so, I would rather, in the world of transparency, I would rather deal with the *Pierce* credit, what you're entitled to, now and then, once I announce the sentence, then we can subtract. I want to put that cart in front of the horse, unless there's a particular objection to it. I would just as soon deal with that because I don't want to say you're getting two bites at the apple, but you are.

So you're going to get a legal determination on the *Pierce* credit, and then further, I'm allowed to consider everything. You know, part of the stipulation of fact, which is -- which I'm allowed to consider, in fact, it says I'm supposed to look at it in determining an appropriate sentence. One, I'm aware that [Appellant] has been in -- his liberties have been restricted . . . . All right, I'll take that into account when I consider what else needs to happen from this day forward. And I also know that . . . he's been deprived of rank and pay for matters, apparently, related to the offenses that are on the charge sheet, and we're going to talk a little bit more about the charge sheet and how far this Article 15 does or doesn't extend to application of that, because I want to make that legal determination in advance so I know what I should be thinking about when I go back to deliberate.

The trial counsel then conceded Appellant was due sentencing credit for the nonjudicial punishment. Prior to sentencing deliberations, the military judge concluded:

I had the opportunity to go back and look at the nonjudicial punishment and the charge sheet; I considered the stipulation of fact and the *Care* inquiry. There appears to be some overlap with regard to the misconduct. The accused is getting 30 days *Pierce* credit against any term of confinement by virtue of the hard labor without confinement, which was adjudged. The court will award an additional 15 days credit to any adjudged confinement as a result of the reduction in [sic] forfeitures.

After announcing the sentence, the military judge explained:

In the course of its deliberations, the court considered the Article 15 imposed by [Appellant's] commander, which is [a] Prosecution Exhibit[.] . . . As further noted, that in light of the forfeitures, and the reduction which overlapped with the accused's

4

> misconduct for which he has been found guilty of, the court deems it appropriate to award the accused an additional 15 days pretrial confinement credit. In total, the accused will be credited with 159 days of pretrial confinement.
>
> I further note that, had this Article 15 not been imposed, and were the accused an E-3 or E-4 as he came into this courtroom, the court's sentence would have included reduction to the grade of E-1.

Trial counsel provided the pretrial agreement appendix—the quantum portion—to the military judge. The military judge discussed the seven itemized terms within the appendix. Upon reaching the term in which the convening authority agreed to apply any sentencing credit to the approved sentence, the military judge asked, "What does paragraph 7 mean?" Trial counsel attempted to explain the provision:

> That was meant as a was meant as a -- just to ensure that any awarded *Pierce* credit, *Allen* credit was applied to whatever is left over from the approved credit. [T]he ultimate goal was to ensure no confinement, restrictions -- yeah, restrictions to specified limits, or approved hard labor without confinement, would absolutely not be approved at any point.

The military judge noted that the appendix's other provisions accomplished that goal, and again asked, "Paragraph 7, apply any sentencing credit to the approved sentence, means what?" Trial counsel responded ". . . given the sentence, and the [specifications], and circumstances, I think it's superfluous, Your Honor . . . I think that was just a stop-gap. I'd invite defense counsel's interpretation of that, but that's my understanding."

The military judge asked the Defense what they thought the provision meant. Trial defense counsel stated, "Sir, defense agrees with trial counsel, and it was included kind of as a safety net." Trial defense counsel explained that such language was identified as a "best practice" in an unidentified case from 2009. The military judge found such an assertion "fascinating." Nevertheless, trial defense counsel maintained, "for all intents and purposes, defense agrees with trial counsel as to the purpose [of the provision]." The military judge inquired further of trial defense counsel:

> MJ: So my question for you is this . . . based on the sentence adjudged, the convening authority can only approve the bad conduct discharge?"
>
> DC: So, to answer the court's question, yes, the convening authority in this case, we would expect to only approve the bad conduct discharge.

MJ: And per the agreement, he could approve the bad conduct discharge. There's no limit on his ability to do that. Is that --

DC: Correct.

MJ: -- your interpretation? It's not a trick question, it's just when there's wording like this, my mind races to the myriad options available, and I want to make sure your understanding, their understanding, and most importantly, [Appellant's] understanding all mesh.

DC: Yes, sir. No, and I'm not taking it as a trick question, I'm thinking through it in my mind as well. Just to entertain the court through kind of a conversation aspect, but yes, the convening authority can, and has the ability to approve the bad conduct discharge.

The military judge next sought Appellant's understanding of the term in the following exchange with Appellant:

MJ: Now paragraph 3 says he's not going to approve any confinement, even though I adjudged it, and regardless of the credit, you know, I'm obligated to do what I think is right under the circumstances, but he's not going to approve any confinement, and he is directing your immediate release, after this trial. He would approve no restrictions to limits. Well, that wasn't imposed, so you're fine there. He would not approve any hard labor. That wasn't adjudged, so you're fine there. And as to paragraph 7, apparently it's, given the circumstances, I guess it was sort of a catchall to make sure that you didn't have any more time in jail under any circumstances, but really, from the court's perspective, it's a paragraph with no import or impact, at least as far as they understand, and my question, is that your understanding as well?

ACC: Yes, sir.

The military judge confirmed the parties' understanding of the term one last time:

MJ: All right. As such, based on my complete interpretation of this, what the convening authority can do is he can decide to approve or disapprove the bad conduct discharge; those are his options in this case. Is that your understanding as well?

ACC: Yes, sir.

MJ: Very good.

6

ATC: Yes, Your Honor.

DC: Yes, Your Honor.

In the staff judge advocate's recommendation (SJAR), the staff judge advocate advised the convening authority that Appellant "received 159 days of pretrial confinement credit" and recommended the convening authority "only approve so much of the sentence as calls for a bad conduct discharge." In his petition for clemency, Appellant claimed that his sentence was "excessive for the nature of the offense [sic] and does not fully consider [his] rehabilitative potential and future aspirations to succeed in and contribute to society." Accordingly, Appellant requested the convening authority "exercise [his] sole discretion as Special Court-Martial Convening Authority under [Rule for Courts-Martial (R.C.M.)] 1107 and disapprove the adjudged Bad Conduct Discharge."[1] Appellant did not seek to have additional sentencing credit applied to his punitive discharge in accordance with any term of his pretrial agreement. In the addendum to the SJAR, the acting staff judge advocate directed the convening authority to consider the matters submitted by Appellant and once again recommended approval of only the bad-conduct discharge.

The interpretation of a pretrial agreement is a question of law that we review de novo. *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). A pretrial agreement is reached through a bargaining process similar to that used in forming commercial contracts. *Id.* Accordingly, "we look to the basic principles of contract law when interpreting pretrial agreements." *Id.* However, these contract principles are outweighed by the constitutional due process protections afforded to an accused. *Id.*

We begin our analysis of a pretrial agreement by looking to the language of the agreement itself. *Id.* When the pretrial agreement's terms are unambiguous, the parties' intent is discerned from the four corners of the contract. *Id.* However, "[w]hen the contract is ambiguous on its face because a provi-

---

[1] Appellant committed his offenses after 24 June 2014. Therefore, the convening authority could only disapprove, commute, or suspend in whole, or in part, Appellant's bad-conduct discharge as provided in a pretrial agreement. 10 U.S.C. § 860(c), as amended by the National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, § 1702, 127 Stat. 672 (26 December 2013). Otherwise, the convening authority retained no authority to act on Appellant's adjudged bad-conduct discharge. *See id.* We find that Appellant's pretrial agreement did not permit the convening authority to disapprove, commute, or suspend in whole, or in part, Appellant's bad-conduct discharge.

sion is open to more than one interpretation, extrinsic evidence is admissible to determine the meaning of the ambiguous term." *Id.*

"In determining the parties' understanding on ambiguous pretrial agreement terms, [we] give the greatest weight to the parties' stated understanding at trial, for it is at the pretrial and trial stages where pretrial agreement disagreements can better be resolved." *United States v. Craven*, 69 M.J. 513, 515 (A.F. Ct. Crim. App. 2010). We also consider the parties' understanding of the pretrial agreement as reflected in the matters submitted post-trial to the convening authority by Appellant and the staff judge advocate under R.C.M. 1105 and 1106, "for this stage provides the next best venue for resolving pretrial agreement disputes." *Id.* We give the least amount of weight to a party's understanding of a pretrial agreement when it is articulated for the first time on appeal. *Id.*

Like the military judge, we find the terms of Appellant's pretrial agreement, when read together and on their face, "fascinating." The ambiguity created by the parties' creative writing can hardly be endorsed as a "best practice." While each term, on its own, may be clear, the parties' overall intent is indiscernible from the four corners of the agreement.

Consequently, the military judge quickly reached the same conclusion and conducted an appropriately thorough inquiry to determine the parties' understanding of the meaning and effect of paragraph 7's provision to apply any sentencing credit to the *approved* sentence. The parties, including Appellant, agreed that this provision was intended as "stop-gap," "safety net," or "catch-all" to ensure Appellant received no confinement, restriction, or hard labor. The parties' interpretations of the pretrial agreement "all meshed" at trial. Trial defense counsel affirmatively stated that "*we would expect* [the convening authority] to only approve the bad conduct discharge." (Emphasis added). Pertinently, trial defense counsel agreed with the military judge that "[t]here's *no limit* on [the convening authority's] ability to [approve the bad-conduct discharge]." (Emphasis added). Likewise, Appellant agreed with the military judge that, "given the circumstances," the provision was a "paragraph with *no import or impact*." (Emphasis added). The parties clearly stated their understanding of this term at trial and this interpretation given the greatest deference. Accordingly, we find that the pretrial agreement permitted the convening authority to approve Appellant's bad-conduct discharge without limitation and does not require the convening authority to attempt to apply any sentencing credit to the discharge. This interpretation is also consistent with Appellant's post-trial submissions in which Appellant did not demand the terms of the pretrial agreement be enforced or that any sentencing credit be applied to his punitive discharge.

Yet, Appellant articulates a different interpretation at the eleventh hour on appeal. *Craven*, 69 M.J. at 514. He now argues that he bargained for and is due credit against the approved bad-conduct discharge. We find Appellant waived such a claim. Even if Appellant's expressed interpretation of the term at trial does not constitute waiver, his current understanding—stated for the first time on appeal—is given the least amount of weight. The fact that Appellant waited until his appeal to raise this as an issue belies his assertion that he believed his pretrial agreement required the sentencing credit he adjudicated and was awarded at trial be applied to the approved bad-conduct discharge. *See id.* Appellant's actions both at trial and upon submission of his clemency matters convince us that Appellant and the convening authority reached a mutual understanding that the bad-conduct discharge could be imposed. *Id.* Put simply, Appellant received the benefit of his pretrial agreement and was not punished twice for any misconduct. *See Pierce*, 27 M.J. at 370.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court