# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TATE, SCHENCK, and WALBURN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 MARK S. GRISHAM**
**United States Army, Appellant**

ARMY 20050479

Headquarters, I Corps and Fort Lewis
Mark L. Toole, Military Judge
Colonel David M. Diner, Staff Judge Advocate (trial and addendum)
Lieutenant Colonel Tania M. Antone, Acting Staff Judge Advocate (post-trial)

For Appellant:  Captain Frank B. Ulmer, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Billy B. Ruhling II, JA; Captain Frank B. Ulmer, JA (on brief).

For Appellee:  Captain James T. Dehn, JA (argued); Colonel John W. Miller II, JA; Major Elizabeth A. Marotta, JA; Captain Michael C. Friess, JA; Captain James T. Dehn, JA (on brief).

29 February 2008

-------------------------------------
OPINION OF THE COURT
-------------------------------------

TATE, Chief Judge:

On 14 April 2005, a military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of wrongful possession and use of methamphetamines, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a  [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for thirty-six months, and forfeiture of all pay and allowances.  Pursuant to a pretrial agreement, the convening authority reduced the term of confinement to nine months, and otherwise approved the adjudged sentence.  This case is before the court for review under Article 66, UCMJ [hereinafter *Grisham II*].

In a previous court-martial on 12 January 2005, a military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of attempted

larceny, failure to go to his appointed place of duty, wrongful possession of methamphetamines with intent to distribute, wrongful distribution of heroin, wrongful use of methamphetamines (four specifications), wrongful carrying of a concealed weapon, and receipt of stolen property.  The military judge sentenced appellant to a bad-conduct discharge, twelve years confinement, and forfeiture of all pay and allowances.  In accordance with the pretrial agreement, the convening authority reduced the term of confinement to forty months and otherwise approved the adjudged sentence.  Appellant appealed that conviction to another panel of this court, asserting that the uncharged misconduct provision of his pretrial agreement precluded the government from preferring charges at a second court-martial.  This court summarily affirmed appellant's first conviction and sentence on 30 August 2007.  *United States v. Grisham*, ARMY 20050032 (Army Ct. Crim. App. 30 Aug. 2007) (unpub.), *pet. denied*, 2008 CAAF LEXIS 101 (C.A.A.F. 9 Jan. 2008) [hereinafter *Grisham I*].

Appellant now asserts, *inter alia*, the government failed to comply with a provision in the *Grisham I* pretrial agreement.  Appellant argues the pretrial agreement in *Grisham I* precluded the government from preferring the charges in the present case.[1]   He asks this court to overturn the findings and sentence in *Grisham II* based on the government's failure to honor the pretrial agreement in *Grisham I*.  We disagree and find no relief is warranted.

**FACTS**

*Grisham I*

To adequately address appellant's assertions, we will take judicial notice of our own record and the conclusion of court-martial proceedings in appellant's first case, *Grisham I*.  *See United States v. Jones*, 64 M.J. 596, 599 (Army Ct. Crim. App. 2007) (citing *United States v. Lovett*, 7 U.S.C.M.A. 704, 708, 23 C.M.R. 168, 172 (1957) ("An appellate court, however, can take judicial notice of its own records."); *United States v. Jackson*, 1 U.S.M.C.A. 190, 192, 2 C.M.R. 96, 98 (1952) (noting

---

[1] Appellant also asserts the preferral of charges against him in *Grisham II* amounts to government misconduct, alleging the government was improperly motivated by seeking retaliation rather than justice when it elected to court-martial him for his subsequent drug use while in pretrial confinement.  We have reviewed this allegation and find it without merit.  The government did not conclusively learn of appellant's subsequent drug use until after the convening authority had referred *Grisham I* and approved the pretrial agreement.  The additional set of charges, therefore, could not be added to that pending case without appellant's consent and waiver of the Article 32, UCMJ, hearing.  The government was not acting in bad faith when it chose to proceed with *Grisham I* as charged, and deferred preferral of the additional charges to a later date.

and citing to "authority in both service and civilian cases for . . . taking judicial notice of the record of trial in another court-martial"); *United States v. Moses*, 11 C.M.R. 281, 285 (A.B.R. 1953) ("The board of review may take judicial notice of the record of trial in a companion court-martial."); *United States v. Lawrence*, 1 C.M.R. 248, 252 (A.B.R. 1951) ("We may take judicial notice of our own official records in certain instances.")).

Between May 2004 and August 2004, appellant possessed and used methamphetamines and subsequently became involved in distributing methamphetamines and heroin to other soldiers. On 26 May 2004, appellant's drug use was discovered when he tested positive for methamphetamines during a unit-wide urinalysis test. Two weeks later, on 7 June 2004, a command-directed health and welfare inspection revealed money, drugs, and drug paraphernalia in appellant's barracks room. Undeterred by these discoveries, appellant's drug use continued for several months. On 20 October 2004, charges were preferred against appellant for wrongful use of a controlled substance (heroin and methamphetamines) and wrongful distribution of a controlled substance (heroin and methamphetamines) (*Grisham I*). Only two days later, appellant was arrested off post by civilian authorities for possessing stolen checks, attempting to steal currency from a bank by using stolen checks, possessing a concealed firearm, and possessing drugs (methamphetamines) and drug paraphernalia.

As a result of the off-post offenses, combined with the aforementioned charges for drug use and possession, appellant was placed in pretrial confinement on 26 October 2004. On 9 November 2004, appellant's commander preferred additional charges relating to the 22 October 2004 off-post offenses. After consulting with his detailed defense counsel, appellant signed an offer to plead guilty on 1 December 2004 in return for a maximum confinement period of forty months. The terms "offer" and "agreement" both appeared on the face of the pretrial offer paperwork submitted to the convening authority.[2] The offer also contained the following provision: "The government agrees not to prefer any additional charges or specifications against the accused for any potential misconduct of which the *government is aware at the time this offer is signed.*" (emphasis added). On 3 December 2004, the convening authority referred all charges to a general court-martial and, on 8 December 2004, accepted and signed appellant's *Grisham I* pretrial agreement.

During the providence inquiry in *Grisham I,* on 12 January 2005, the military judge reviewed appellant's pretrial agreement to ensure appellant understood the terms. The record reflects that both trial and defense counsel agreed, and appellant understood, the government could not prefer charges for any misconduct it was

---

[2] The pretrial agreement was labeled, as is standard practice, "PRETRIAL AGREEMENT (OFFER TO PLEAD GUILTY)."

aware of on or before 1 December 2004, the date appellant signed the offer. The military judge made clear this date should not be confused with 8 December 2004, the date the convening authority signed the agreement. The following colloquy ensued:

> MJ: So both parties agree. I want to make sure that that's your understanding also, Private Grisham. That any misconduct that you might have committed that's not been charged here, if the government was aware of it on or before 1 December, charges cannot be preferred. Is that your understanding also?
>
> ACC: Yes, ma'am.

Once the providence inquiry was complete, the military judge accepted appellant's pleas, finding that he had entered them willingly and voluntarily, with full understanding of their meaning and effect.

*Grisham II*

While in pretrial confinement and at the same time the offer was presented to the convening authority, appellant arranged to have someone mail crystal methamphetamine to him in jail. The drug was hidden inside an envelope appellant received sometime after 26 October 2004. Appellant used the crystal methamphetamine several days later. On 1 December 2004, the confinement facility conducted a urinalysis test for all inmates. Appellant's urine sample was forwarded to the Tripler Army Medical Center laboratory where it initially tested positive for amphetamines on 6 December 2004. In accordance with the facility's standing operating procedures and Department of Defense requirements, the laboratory conducted several follow-up confirmatory tests and, on 10 December 2004, certified the positive results on a Dep't of Def., Form 2624, Specimen Custody Document – Drug Testing (Feb. 1998). These results were then forwarded to appellant's unit.

Consequently, appellant faced possible further additional charges stemming from the wrongful possession and use of a controlled substance while he was in pretrial confinement. Defense and government counsel entered into preliminary discussions to add these additional charges to the pending *Grisham I* offenses already referred to general court-martial on 3 December 2004. Negotiations, however, stalled and the government proceeded without the additional charges and specifications. The *Grisham I* court-martial convened on 12 January 2005 and the military judge found appellant guilty in accordance with his pleas. After trial, appellant never mentioned any concerns with his guilty plea or pretrial agreement in his request for clemency matters submitted to the convening authority, in accordance with Rule for Courts-Martial [hereinafter R.C.M.] 1105.

Almost a month after appellant was found guilty and sentenced in *Grisham I*, the government preferred new charges for the possession and use of methamphetamines discovered while he was in pretrial confinement. These charges were augmented by an additional charge for conspiracy to distribute methamphetamines, and served as the basis for appellant's conviction in *Grisham II*. Appellant agreed to unconditionally plead guilty to the wrongful use and possession specifications in exchange for dismissal of the conspiracy charge, disapproval of a dishonorable discharge, if one were adjudged, and limitation of confinement to nine months. Appellant's offer to plead guilty in *Grisham II* did not mention the *Grisham I* misconduct provision. On 6 April 2005, the convening authority approved the pretrial agreement.

At no stage in the *Grisham II* court-martial did the defense counsel (who also represented appellant in *Grisham I*) or appellant assert that the *Grisham I* pretrial agreement limited the government from preferring charges in *Grisham II*. As in *Grisham I*, appellant failed to bring such objections to the attention of the convening authority when submitting post-trial clemency matters pursuant to R.C.M. 1105 in *Grisham II*.

**LAW**

*Standard of Review*

"Interpretation of a pretrial agreement is a question of law, which we review de novo." *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006); *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999). Although not addressed by appellate counsel, this court finds substantial evidence in the record to demonstrate waiver of appellant's asserted issue. Nevertheless, rather than determine whether appellant's unconditional guilty plea waived any appellate right to contest the validity of his preferral, we consider appellant's argument as a Constitutional claim that his Due Process rights were violated.[3]

---

[3] Under the circumstances of this case, we review appellant's Constitutional challenge to his convictions de novo. *See United States v. Bart*, 61 M.J. 578, 581 (N.M. Ct. Crim. App. 2005) (allowing appellant to raise a Constitutional challenge to a sodomy conviction for the first time on appeal); *United States v. Sollmann*, 59 M.J. 831, 834 (A.F. Ct. Crim. App. 2004) (citing *Menna v New York*, 423 U.S. 61 (1975)) ("a guilty plea does not preclude a [C]onstitutional challenge to the underlying conviction"). *But see United States v. Heath*, 39 M.J. 1101 (C.G.C.M.R. 1994) (applying the principle of waiver for a Constitutional challenge to a guilty plea conviction raised for the first time on appeal); *United States v. Collins*, 41 M.J. 428, 430 (C.A.A.F. 1995) (applying waiver for a double jeopardy challenge to a guilty plea because the "existing record" was not sufficiently developed).

*Guilty Plea*

The gravity of pleading guilty is such that the Supreme Court mandated the Constitutional requirement that any guilty plea must be entered into voluntarily, knowingly, and with an understanding of the surrounding circumstances and likely consequences. *See Santobello v. New York*, 404 U.S. 257, 262-263 (1971). While the same requirement exists for guilty pleas in military courts, "the military justice system imposes even stricter standards on military judges with regards to guilty pleas than those imposed on federal civilian judges." *United States v. Perron*, 58 M.J. 78, 81 (C.A.A.F. 2003) (citing *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996)). The military judge has an "independent obligation . . . to ensure that the accused understands what he gives up because of his plea and the accused's consent to do so must be ascertained." *United States v. Resch*, 65 M.J. 233, 237 (C.A.A.F. 2007).

Furthermore, actions of the parties may affect a guilty plea even after the plea has been accepted. "It is fundamental to a knowing and intelligent plea that where an accused pleads guilty in reliance on promises made by the Government in a pretrial agreement, the voluntariness of the plea depends on the fulfillment of those promises by the Government." *Perron*, 58 M.J. at 82. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 263. However, an "appellant bears the burden of establishing that there is a significant basis in law or fact to overturn a guilty plea." *Lundy*, 63 M.J. at 301. Consequently, to overturn a guilty plea it becomes necessary for an appellant to demonstrate that a term of his pretrial agreement was violated and he, therefore, did not receive the benefit of his bargain. *See Perron*, 58 M.J. at 82; *see also Santobello*, 404 U.S. at 262.

*Contract Law and Pretrial Agreements*

A pretrial agreement is a contract created through the bargaining process between the accused and the convening authority. *See Lundy*, 63 M.J. at 300; *Perron*, 58 M.J. at 86; *Acevedo*, 50 M.J. at 172. It is well established in federal and military courts that pretrial agreements will be interpreted using contract law principles. *See Acevedo*, 50 M.J. at 172 (citing *Government of Virgin Islands v. Scotland*, 614 F.2d 360, 363-64 (3rd Cir. 1980)). Generally, pretrial agreements will be strictly enforced based upon the express wording of the agreements; however, "[w]hen interpreting pretrial agreements contract principles are outweighed by the Constitution's Due Process Clause protections for an accused." *Id.*

"We begin any analysis of a pretrial agreement by looking first to the language of the agreement itself." *Id.* In the context of pretrial agreements involving the Constitutional rights of a military accused, "we look not only to the

terms of the agreement, or contract, but to the accused's understanding of the terms of an agreement as reflected in the record as a whole." *Lundy*, 63 M.J. at 301.

*Military Judge's Role*

It is paramount for the military judge to resolve any ambiguities, inconsistencies, or misunderstandings between the accused and the government during the providence inquiry. *United States v. Dunbar*, 60 M.J. 748, 750 (Army Ct. Crim. App. 2004). "We have long emphasized the critical role that a military judge and counsel must play to ensure that the record reflects a clear, shared understanding of the terms of any pretrial agreement between an accused and the convening authority." *United States v. Williams*, 60 M.J. 360, 362 (C.A.A.F. 2004). The military judge is required to ensure an accused understands the pretrial agreement and the parties agree to its terms. *See* R.C.M. 910(f)(4); *see also Dunbar*, 60 M.J at 750. "The accused must know and understand not only the agreement's impact on the charges and specifications which bear on the plea . . . but also other terms of the agreement, including consequences of future misconduct or waiver of various rights." *United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008) (quoting *United States v. Felder*, 59 M.J. 444, 445 (C.A.A.F. 2004)). In the face of ambiguity, it is the military judge's responsibility to clarify the terms of the agreement on the record, and ensure that all parties, especially the accused, understand the terms and their implications. *See Dunbar,* 60 M.J. at 751 (citing *United States v. Reedy*, 4 M.J. 505, 506 (A.C.M.R. 1977) and Dep't of the Army, Pam 27-9, Legal Services: Military Judges' Benchbook, para. 2-2-6 (1 Apr. 2001)).

## DISCUSSION

*Terms of the Pretrial Agreement*

The parties agree, and the record reflects, that the government learned of the additional misconduct on 6 December 2004. Appellant, however, now asserts that the uncharged misconduct provision in his *Grisham I* pretrial agreement precluded the convening authority from preferring the charges in *Grisham II*, because the government knew of the additional misconduct prior to the date the convening authority signed the offer, 8 December 2004. The government asserts the additional charges were not precluded and, therefore, appellant was only protected from further charges of misconduct as of the date appellant signed the offer, 1 December 2004.

The operative language at the crux of this issue is the phrase "at the time this offer is signed." Appellant and counsel signed the pretrial agreement on 1 December 2004. The convening authority then accepted the agreement by signing it on 8 December 2004. Applying basic contract law principles to this provision, we cannot agree with appellant's position that the record unambiguously supports the conclusion that the "offer" was signed on 8 December 2004.

7

The term "offer" has distinct legal significance in the context of contract law. An offer is the "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Restatement (Second) of Contracts* §24 (1981). The offer, standing alone, is not a contract.[4] It must be accepted by the offeree before it becomes a contract. Acceptance of an offer is the "manifestation of assent to the terms made by the offeree." *Restatement (Second) of Contracts* §50 (1981). Thus, a strict application of contract law results in the conclusion that it was appellant who made the offer to enter into the pretrial agreement. This offer was "signed" when appellant and his counsel executed it on 1 December 2004. True, the document was later signed again when the convening authority accepted the offer, but the operative language of the agreement speaks of "the time the offer was signed," not the time "it is signed by both parties."

Under the terms of the agreement, appellant reaped the benefit of the bargain, protection from prosecution for any known uncharged misconduct at the time appellant signed the offer on 1 December 2004. Our jurisprudence warns against strictly applying contract law principles in certain circumstances, particularly when such interpretations harm the accused.[5] The present case, however, clearly demonstrates an example of when the terms of the agreement benefited an appellant. Once the convening authority accepted appellant's offer, appellant was insulated against prosecution for any known offenses discovered prior to the date of the offer. Only misconduct discovered after the effective date of 1 December 2004 would be viable for prosecution.

As clarified on the record, appellant understood the effective date of his offer as 1 December 2004, and therefore understood the exact time limitation on the government's protection from prosecution for prior misconduct. Since the terms of the offer, drafted by appellant, explicitly state that the government will not pursue any additional charges for misconduct *known of at the time the agreement was signed*," a belief that he would be protected from prosecution for misconduct not yet discovered on 1 December 2004 is without justification. As the record indicates, the laboratory did not possess even preliminary positive results on appellant's urinalysis

---

[4] "An offer is a promise to do or refrain from doing some specified thing in the future; a display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract." *Black's Law Dictionary* 1111 (7th ed. 1999).

[5] As Chief Justice Crawford commented, in her concurring opinion, *United States v. Hardcastle,* 53 M.J. 299, 304 (C.A.A.F. 2000), "[j]ustice has no price tag and pretrial agreements can not always fit within the strictures of contract-law principles."

testing until 6 December 2004.  Therefore, this misconduct was not within the contemplation of the parties when the terms were drafted and the offer was signed by appellant on 1 December 2004.

*Understanding of the Parties*

Appellant urges this court to view the term "offer" synonymous with "pretrial agreement."  Both terms appear on the pretrial agreement's header.  We do not agree that this juxtaposition means the terms are synonymous.  At best, the juxtaposition creates an ambiguity compelling us to look outside the four corners of the document to establish a clear understanding of the pretrial agreement.  As our superior court reminded us in *Lundy,* we must look to the record for clarification of the parties' understanding at the time the offer was made, the agreement was created, and appellant entered his pleas.  63 M.J. at 303 (citing *Perron*, 58 M.J. at 85).

Recognizing the responsibility to resolve any potential discrepancies, the military judge in *Grisham I* ensured the terms of the agreement, wherever potentially ambiguous, were adequately clarified on the record.  She thoroughly reviewed with both parties the terms dictating the limits of the protection against prosecution, explicitly stating, "the accused has protection against charges being preferred for any offense that the government was aware of on or before 1 December 2004."  The military judge specifically asked appellant, on the record, whether this was also his understanding of the terms of his pretrial agreement.  Appellant responded, "Yes, ma'am."  With this clear understanding of his pretrial agreement, it is now disingenuous for appellant to assert he believed the effective date of his protection from prosecution for misconduct was 8 December 2004.  As the court stated in *Acevedo*:

> Looking to the actions of the participants at trial we find little support for appellant's claim that the agreement was ambiguous or other than as he understood it.  To the contrary, the record shows that appellant understood the agreement and that he knowingly and intelligently pleaded guilty in accordance with it.

50 M.J. at 172.

*Effect of the Pretrial Agreement*

Appellant urges this court to overturn the findings and sentence in *Grisham II* because the *Grisham I* pretrial agreement barred the government from prosecuting appellant, and therefore the charges underlying *Grisham II* were preferred in direct violation of the terms of his first pretrial agreement.  This assertion mistakenly

relies upon appellant's patently false premise that the effective date of his offer was 8 December 2004.

In this case, the trial judge identified the possibility of confusion and conducted a thorough inquiry on the record to resolve any ambiguities created by the provisions of the pretrial agreement. The colloquy among the trial judge, appellant, and both counsel clearly demonstrates that the parties agreed on the effective date of the pertinent provision. As in *Acevedo*, the trial judge in this case "fulfill[ed] [her] affirmative obligations . . . [and] ensured on the record that appellant had entered into the agreement freely and voluntarily." 50 M.J. at 172-73 (internal citations omitted).

The judge's efforts, as memorialized in the record, distinguish this case from *United States v. Williams*, where the record reflected "the exchange between the parties and the military judge plainly demonstrates something far short of a 'clear, shared understanding' of the disputed restitution provision." 60 M.J. 360, 362 (C.A.A.F. 2004). Likewise, we are confident that a meeting of the minds occurred here. *See Dunbar*, 60 M.J. at 751 (holding that "no meeting of the mind's occurred"). All parties clearly confirmed they understood the operative date of the relevant provision as 1 December 2004. Even after both his courts-martial, appellant had the opportunity to challenge the military judge's interpretation of the pretrial agreement when he submitted his R.C.M. 1105 matters to the convening authority.[6] Assisted by competent and legally qualified counsel, appellant failed to do so. We find the government was not precluded from preferring charges against appellant and his pleas were knowing and voluntary.

We have considered appellant's remaining assignments of error, and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. Accordingly, the findings and sentence are affirmed.

---

[6] Our superior court has identified use of R.C.M. 1105 submissions as a method to avoid re-litigating the providency of guilty pleas:

> Where there has been a mutual misunderstanding as to a material term, the convening authority and an accused may enter into a written post-trial agreement under which the accused, with the assistance of counsel, makes a knowing, voluntary, and intelligent waiver of his right to contest the providence of his pleas in exchange for an alternative form of relief.

*United States v. Smith*, 56 M.J. 271, 279 (C.A.A.F. 2002).

GRISHAM – ARMY 20050479

Senior Judge SCHENCK and Judge WALBURN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

11