# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40786**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Ward W. FISCHER**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 March 2026

———————————

*Military Judge*: Lance R. Smith;[1] J. Peter Ferrell.

*Sentence*: Sentence adjudged on 12 December 2024 by GCM convened at Joint Base Andrews Naval Air Facility Washington, Maryland. Sentence entered by military judge on 21 January 2025: Dishonorable discharge, confinement for 480 months, reduction to E-1, and a reprimand.

*For Appellant*: Major Frederick J. Johnson, USAF; Captain Joshua L. Lopes, USAF.

*For Appellee*: Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Captain Donnell D. Wright, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Judge KUBLER delivered the opinion of the court, in which Senior Judge DOUGLAS and Judge MCCALL joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

[1] Article 30a, Uniform Code of Military Justice, 10 U.S.C. § 830a, proceeding.

KUBLER, Judge:

A military judge at a general court-martial found Appellant guilty, consistent with his pleas and pursuant to a plea agreement, of one specification of rape of a child under the age of 12 by penetrating her mouth with his penis on divers occasions; one specification of sexual assault of a child under the age of 16 by penetrating her vulva with his finger; and four specifications of sexual abuse of a child under the age of 16 with an intent to satisfy his sexual desires by touching her genitalia with his hand on divers occasions, touching her vulva with his hand, licking her breast with his tongue, and touching her breast with his hand, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[2] Appellant's daughter is the named victim in all charges and specifications.

Appellant entered into a negotiated plea agreement. In the plea agreement, Appellant agreed to plead guilty to the six specifications and charge above. Senior Trial Counsel agreed to withdraw and dismiss three additional specifications, alleging violations of Article 120b, UCMJ. The plea agreement specified that the military judge must adjudge a dishonorable discharge, and provided confinement ranges for each specification, while requiring the confinement terms to run consecutively. When added together the minimum amount of confinement for the six specifications running consecutively was 240 months (20 years) and the maximum amount of confinement was 480 months (40 years). The plea agreement did not state a limit on reductions in grade and did not state a limit on a reprimand. At the same time, the plea agreement did not state "all other forms of punishment were authorized." Instead, it was silent on these points.

The military judge sentenced Appellant to a dishonorable discharge, the maximum confinement allowed under the plea agreement for each specification to run consecutively for a total of 480 months confinement, reduction to the grade of E-1, and a reprimand. During our Article 66(d), UCMJ, 10 U.S.C. § 866(d) review, we identified that in the entry of judgment, Specification 8 of the Charge contained the words "on divers occasions," which had been excised from the specification, and we correct the error in our decretal paragraph.

Appellant asks this court to (1) set aside the portion of his sentence that included a reduction in grade and reprimand because he asserts they exceeded the limits of the plea agreement; and (2) to reassess the confinement from 480

---

[2] References to two of the offenses (Specification 1 (rape of a child) and Specification 5 (sexual abuse of a child under the age of 16) of the Charge), in violation of Article 120b, UCMJ, are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise noted, all other references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

months (the maximum under the negotiated plea agreement) to 240 months (the minimum under the plea agreement) because he asserts the sentence is inappropriately severe.

For the reasons set forth below, after correcting the entry of judgment to remove the words "on divers occasions" from Specification 8 of the Charge, we affirm the findings and sentence and find no error that materially prejudiced Appellant's substantial rights.

# I. BACKGROUND

Appellant, a 6-foot-2-inch, 255-pound technical sergeant, deployed twice and received no adverse paperwork during the 17 years and 4 months he served in the Air Force intelligence community.

When Appellant deployed in February 2023, Appellant's daughter told her mother she was glad Appellant was gone, that she needed counseling, was uncomfortable with Appellant tucking her in at night and later in May 2023 told her mother that she thought Appellant raped her, because Appellant put his penis in her mouth. At the time Appellant's daughter disclosed this, she was 15 years old. Appellant had been sexually abusing his daughter for the preceding ten years beginning when his daughter was 5 years old.

His wife, initially confused about what she was hearing, asked Appellant, who was still deployed, why their daughter was uncomfortable with him—Appellant provided a multitude of explanations. "She said she had a class in school around January," his wife texted, "that made her feel like you had been doing something wrong with her." Appellant responded by saying that it might be because he spanked her, or it might be his yelling at her, and, "Hey, just racking my brain," he said, "but I also might have gone overbord [sic] with children starving in Africa bit." When confronted in a more pointed way, he attributed it to confusion and misperception, perhaps originating from something she learned in school. "And what happens if that perception is reported to the therapist," his wife asked, "and now your [sic] facing charges of sticking your d[**]k in her mouth?" "I can't prove that I didn't," he said, "but what if she perceives that I did? . . . What if I violated her in her dreams? That would leave me traumatized. . . . Now I'm sad." The chicanery continued through the ten pages of text messages. Appellant specifically denied sexually abusing his daughter.

A little more than two months later,[3] when confronted by his wife in a separate text message conversation after she had more information from their daughter and her daughter's interviews with law enforcement, Appellant, initially evasive, admitted to sexually abusing his daughter.

Appellant sexually abused his biological daughter from when she was five years old until she reported it ten years later. Over the span of those ten years, Appellant's severe sexual abuse included penetrative and non-penetrative offenses, which occurred across multiple duty locations, on multiple occasions in the living room, in Appellant's bedroom, in the daughter's bedroom, and at the home of Appellant's parents when the family visited them on Christmas. Appellant took advantage of the bedtime ritual of tucking his daughter in to touch her, made lurid requests, and controlled the home environment to facilitate his sex crimes. On one such occasion, Appellant described in court, when his then 5-year-old daughter asked for help with the television, Appellant asked if she would help him in return and directed her to perform oral sex in exchange. "After I asked her if she would perform [oral sex], I turned the television to—I fixed the television, I think I needed to just change the channel or something like that."

His daughter considered whether Appellant understood what he was doing was wrong, realized Appellant did not want her mother to know, and then reasoned he must know it is wrong. She noticed Appellant would abuse her when her mother was away and noticed that when Appellant spoke about these things while her mother was at home, he would whisper but only when discussing his abuse. Isolated under these conditions for ten years, Appellant's daughter mustered up the strength to report this when Appellant was away and she was older. "I used to think about what he did to me. I used to have nightmares about it. . . . I did not like being touched, but I did not tell him to stop because I was worried he'd hurt me if I told him no," his daughter told the judge. "It was not until I was a little older that I realized that what he had been doing to me for most of my life was terribly wrong." "One of the most confusing things," she said, "is that he was doing these things to me for so long that I don't actually know what normal is like."

---

[3] This second text message conversation was a pretextual text message conversation the Air Force Office of Special Investigation asked Appellant's wife to have with Appellant after they had interviewed both her and Appellant's daughter.

**A. Plea Agreement Interpretation**

**1. Additional Background**

Appellant's counsel claims for the first time on appeal that the absence of a clause stating, "the military judge may adjudge additional forms of punishment beyond those with limitations set forth in the agreement," prohibited the reduction in grade and the reprimand adjudged. The Government asserts the absence of a limitation on a reduction in grade and reprimand should be read to mean there is no limitation on a reduction in grade or a reprimand.

The plea agreement did not state a limit on reductions in grade and did not state a limit on a reprimand. At the same time, the plea agreement did not state "all other forms of punishment were authorized." Instead, it was silent on these points. During the providence inquiry between the military judge and Appellant, there was no mention of any other limitations on the sentence, except those addressed in the plea agreement—*i.e,* confinement and the dishonorable discharge. After the military judge announced sentence, he did not ask, as recommended: "MJ: Do counsel agree that the adjudged sentence complies with the terms of the plea agreement and the law?" *See Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9, ¶ 2-4-2 (21 Jan. 2026).

**2. Law**

"The interpretation of a [plea] agreement is a question of law, which is reviewed under a de novo standard." *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted).

"[W]e look to the basic principles of contract law when interpreting [plea] agreements." *United States v. Craven*, 69 M.J. 513, 514 (A.F. Ct. Crim. App. 2010) (first alteration in original) (citing *Acevedo,* 50 M.J. at 172). "However, these contract principles are outweighed by the constitutional due process protections afforded to an accused." *United States v. Pulliam*, No. ACM S32379, 2017 CCA LEXIS 202, at *12 (A.F. Ct. Crim. App. 23 Mar. 2017) (unpub. op.) (citing *Acevedo*, 50 M.J. at 172). To interpret the meaning of a plea agreement we look in order of importance to (1) the language of the plea agreement itself (which controls when unambiguous), (2) the parties' stated understanding of the plea agreement at trial, then (3) the parties' understanding of the plea agreement as reflected in post-trial matters and, finally, (4) the parties' stated understanding articulated for the first time on appeal, which we give the least amount of weight to. *Craven*, 69 M.J. at 514–15.

A contract is ambiguous on its face when a provision is open to more than one interpretation. *Craven*, 69 M.J. at 515 (citing *United States v Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992)).

### 3. Analysis

Guided by the principles in *Craven,* 69 M.J. at 514–15, we conclude the pretrial agreement placed no restrictions on the judge's ability to adjudge a reduction in grade and reprimand in this case.

#### a. Plain Language of the Plea Agreement

We begin our analysis with the threshold question of whether the language in the plea agreement is unambiguous, which if so, ends the analysis. *Id.* at 514–15. To analyze the plain language of the plea agreement, we find the relevant language resides in the paragraph below.

> 4. In exchange for my plea of guilty to the Charge and Specification as stated in Paragraph 2a, I agree that the military judge must, upon acceptance of my guilty plea, enter a sentence *subject to the following limitations*:
>
> a. to Specification 1 of the Charge:
>
> Maximum confinement: 180 months of confinement
>
> Minimum confinement: 120 months of confinement
>
> [Paragraphs b–f each contained confinement ranges for the specifications Appellant pleaded guilty to.]
>
> g. All confinement terms are to run consecutively; and
>
> h. A dishonorable discharge.

(Emphasis added).

The agreement required the military judge to "enter a sentence subject to [those] limitations." Paragraphs 4.a–f set the maximum and minimum limits for confinement—that constituted one limitation on the sentence. Paragraph 4.g required that the adjudged confinement terms run consecutively—that constituted another limitation on the sentence. Paragraph 4.h, the final limitation on the sentence, required a dishonorable discharge. There are no other limitations written in the plea agreement. Every limit and bound within the agreement is defined in paragraphs 4.a–h. Therefore, if the judge "enter[ed] a sentence subject to [those] limitations," then that sentence met the plain language of the plea agreement. We do not read additional terms into a plea agreement that are not there. As stated above, an additional term to the effect of "i. There are no other restrictions on the sentence that may be adjudged," would have been helpful in emphasizing this point. However, absent that emphasis, we still read Paragraph 4 to mean the limitations listed were *all* the limitations upon the military judge as understood by the convening authority and Appellant. If the parties intended to set additional limits on the sentence, those limits should have been included in this paragraph. We disagree with Appellant's

assertion that paragraph 4 listed every type of punishment that could be adjudged, and that the reprimand and reduction in grade were not listed and therefore not permitted as a part of the sentence.

Nevertheless, it is possible to read Paragraph 4 in two ways: (1) that the limitations set forth permit any other type of punishment not limited or (2) that paragraph four listed every type of punishment that could be adjudged and those not listed were not permitted. Though we find the latter argument less persuasive, we also recognize that due process concerns outweigh a strict plain language interpretation where there is a possibility of another interpretation. Therefore, assuming the plea agreement is ambiguous, we continue our analysis using extrinsic evidence. *See Craven*, 69 M.J. at 514–15.

### b. Stated Understandings at Trial

In accordance with our opinion in *Craven,* we next look to the parties' stated understandings at trial regarding the plea agreement, the extrinsic evidence to which we give the greatest weight. This review reinforces the conclusion we reached with our interpretation of the plain language of the document. The military judge explained that the maximum punishment Appellant faced "in this case based solely on [his] guilty plea is confinement for life without eligibility of parole, reduction to the grade of E-1, total forfeitures of all pay and allowances and a dishonorable discharge," which Appellant confirmed he understood. The military judge, in discussing the plea agreement, explained it required that he "impos[e] a sentence that comports with the limitations contained in the [plea] agreement; specifically, the limitations contained in paragraph 4.a through 4.h." Appellant agreed he understood this. Paragraphs 4.a through 4.h set no limitation on a reduction in grade or reprimand. Later, the judge asked, and re-asked—four times in succession—if Appellant and his counsel agreed that the plea agreement contained all of the understandings or agreements in the case and that no promises that are not written in the agreement were made. Appellant and trial defense counsel both confirmed the plea agreement contained all of the agreements in the case. Finally, when the military judge announced the sentence, which included a reduction in grade and reprimand, trial defense counsel did not object to the sentence being outside the limits permitted under the plea agreement. Though the military judge did not ask, "Do counsel agree that the adjudged sentence complies with the terms of the plea agreement and the law?" as the Military Judges' Benchbook, cited *supra*, suggests, he did ask, "Defense Counsel, anything else to take up before this court adjourns?" Trial defense counsel's response to this—"No, your Honor"—indicates a lack of objection to this total adjudged sentence, and therefore an agreement from trial defense counsel that the sentence complied with the terms of the plea agreement.

### c. Stated Understanding in Post-Trial Statements

Next, we analyze the stated understandings about the plea agreement contained in the post-trial submissions, extrinsic evidence to which we give the next greatest weight. Trial defense counsel's discussion of the sentence on behalf of Appellant in his request for clemency provides additional clarity on this issue. In that clemency request, trial defense counsel acknowledged they submitted the offer for a plea agreement. Trial defense counsel detailed the plea agreement's required waiver of forfeitures, and then restated the adjudged sentence in its entirety, including the reduction in grade and reprimand. Trial defense counsel concluded that the terms of the agreement required the convening authority waive the automatic forfeitures. While both restating the sentence, including the reduction in grade and reprimand, and what he understood to be required by the plea agreement, trial defense counsel did not assert the plea agreement prohibited the reduction in grade or reprimand. This makes clear, competent trial defense counsel who advised Appellant on the plea agreement, understood those punishments were acceptable, despite the silence, under the plea agreement.

The argument made by Appellant's appellate defense counsel did not include any assertion that trial defense counsel, who advised Appellant at the time of the plea agreement, felt the agreement prohibited the reduction in grade or reprimand. As it is raised for the first time on appeal, we give the least weight to this "11th hour" assertion by Appellant per *Craven*, 69 M.J. at 515.

We find the plea agreement's plain language, as well as the parties' stated understandings both at trial and contained in post-trial submissions, confirm there were no limitations on reductions in grade or reprimands in Appellant's plea agreement. *See id.* Accordingly, we find the adjudged sentence did not exceed the limits of the plea agreement.

### d. Best Practices

We recommend two best practices for the field to aid in our review of future plea agreements. First, if parties articulate either "there are no other restrictions on the convening authority's ability to approve other forms of punishment that may be adjudged" or "no other forms of punishment may be adjudged" within plea agreements, that additional clarity would truncate our review of plea agreements with respect to sentence limitations. Second, if parties adhere to the procedural guidance, specifically paragraph 2-4-2 of the *Military*

*Judge's Benchbook, Announcement of Sentence*,[4] wherein it recommends the following question to the parties, "MJ: Do counsel agree that the adjudged sentence complies with the terms of the plea agreement and the law?"—the resultant confirmed understandings and the opportunity to address differences would resolve most disagreements as to the meaning of the plea agreement. Though the absence of these practices was not fatal to our review, we highlight them here as recommendations to our colleagues in the field.

## B. Sentence Appropriateness

### 1. Law

This court reviews issues of sentence appropriateness de novo. *See United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)).

> Article 66(d)(l), UCMJ, provides that a Court of Criminal Appeals (CCA) "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." Applying this provision, CCAs "'may only affirm' that which they *independently* find 'correct in law and fact' and that which they determine on the basis of the entire record, should be approved.'"

*United States v. Spencer*, __ M.J. __, No. 25-0192, 2026 CAAF LEXIS 143, at *5 (C.A.A.F. 9 Feb. 2026) (citing *United States v. Powell,* 49 M.J. 460, 463 (C.A.A.F. 1998)).

Additionally, "when a Court of Criminal Appeals (CCA) conducts a sentence appropriateness review under Article 66(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d) (2018), the CCA must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted).

---

[4] The United States Court of Appeals for the Armed Forces previously stated that though "the Benchbook is not binding as it is not a primary source of law, the Benchbook is intended to ensure compliance with existing law" and recommended judges adhere to the instructions contained therein. *United States v. Riley*, 72 M.J. 115, 122 (C.A.A.F. 2013).

"An accused's own sentence proposal is a reasonable indication of the sentence's probable fairness to the accused." *United States v. Arroyo*, 86 M.J. 89, 93 (C.A.A.F. 2025). "But that said, a CCA still 'has a duty to determine on its own whether the sentence agreed to by the parties is appropriate.'" *Spencer*, 2026 CAAF LEXIS 143, at \*6 (citing *Arroyo*, 86 M.J. at 93).

Although the Courts of Criminal Appeals are empowered to "do justice" we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (citation omitted).

### 2. Analysis

Appellant asks this court to reduce the confinement term from the maximum confinement permitted under the plea agreement (40 years) to the minimum confinement (20 years), without articulating what portion of the segmented sentence is inappropriately severe.[5] Instead, Appellant asserts the sentence as a whole is inappropriately severe based on Appellant's military record, the nature of the crimes, and efforts made by Appellant to rehabilitate himself and take responsibility.

We acknowledge Appellant's military record reflects he scored high on his military test scores, deployed twice, and received no adverse personnel actions during his 17 years and 4 months of service in the Air Force's intelligence community.

We find the nature of the crimes supports the sentence. Appellant argues his crimes, while grave, could be sufficiently punished with 20 years confinement vice 40 years. We considered how Appellant, a 6-foot-2-inch, 255-pound man, directed his 5-year-old daughter to perform acts requiring age-inappropriate knowledge for his sexual gratification as we weighed the nature and seriousness of the offenses. Though Appellant asserts he did not use physical violence, his daughter was clear she was afraid of Appellant. Appellant repeatedly violated the sanctity of the child's family homes across multiple assignments, where she should feel safe and protected. During the span of these ten years, Appellant sexually assaulted his daughter throughout the home in her bedroom, in his bedroom, in the family living room, and even at her grandparents' home; his daughter had no refuge and no sanctuary.

Appellant describes the criminal events as having occurred during several discrete time periods over the ten-year period as opposed to a continuous event. However, it is clear from the entire record, the behavior was ongoing and his

---

[5] The military judge sentenced Appellant to 180 months for the one specification of rape of a child; 84 months for the one specification of sexual assault of a child under the age of 16 years; and 84 months, 60 months, 36 months, and 36 months for each of the specifications of sexual abuse of a child under the age of 16 years, respectively.

daughter experienced the abuse that way. Appellant's daughter had nightmares and told the court, "One of the most confusing things is that he was doing these things to me for so long that I don't actually know what normal is like." The crimes spanned a decade of his 15-year-old daughter's life; each individual incident of sexual abuse was connected to the next through nightmares, whispers, and manipulation. We reject the argument that our review should narrow a decade of abuse to artificially disconnected periods of time. Appellant's daughter was consistently vulnerable and finally sought a way out of the abuse by asking her mother about moving out and going to boarding school to avoid Appellant upon his return from his deployment. These aspects and the specific acts committed on Appellant's daughter support the sentence for each segment of the segmented sentence and the appropriateness of the sentence as a whole. *See Flores*, 84 M.J. at 278.

While we acknowledge Appellant pleaded guilty and took steps toward rehabilitation, we do not change our view that the sentence is appropriate. Appellant pleaded guilty to take responsibility, because he was guilty, because it was in his best interest, and because by doing so he gained the benefit of the plea agreement in this case. Our review of Appellant's willingness to plead guilty and rehabilitative efforts does not affect the appropriateness of the sentence.

Finally, we note the negotiated plea agreement contemplated the possibility of this sentence. Appellant entered into this agreement, with the advice of competent counsel, and stated it was in his best interest. As such, it is one indication of "the sentence's probable fairness to the accused." *Arroyo*, 86 M.J. at 93. We recognize that the military judge gave the maximum possible confinement under the plea agreement for each specification. The fact that Appellant entered into this negotiated plea agreement, including the maximum lengths of confinement term, per specification, indicates Appellant believed the upper limits of this plea agreement provided a tangible benefit to him, in addition to the dismissal of specifications of the charge. We are also aware that despite what a plea agreement negotiated by Appellant may or may not indicate, we must independently find the sentence correct in law and fact, and determine on the basis of the entire record, if this is a sentence which should be approved. *See Spencer*, 2026 CAAF LEXIS 143, at *6.

We have carefully considered Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. *See Sauk*, 74 M.J. at 606. We used our review of those matters to "consider the appropriateness of each segment of [Appellant's] sentence and the appropriateness of the sentence as a whole." *See Flores*, 84 M.J. at 278. We conclude the sentence as adjudged for each segment and as a whole is appropriate and should be approved.

## II. CONCLUSION

We modify the entry of judgment by excepting the words "on divers occasions" for Specification 8 of the Charge. The findings, as reflected in the modified entry of judgment, are correct in law and fact. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016 *MCM*). In addition, the sentence is correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and the sentence are **AFFIRMED**.

FOR THE COURT

SEAN J. SULLIVAN, Maj, USAF
Acting Clerk of Court